[No. 5152.   Decided July 12, 1904.]

A. E. Braymer, *Appellant*, v. Seattle, Renton and Southern Railway Company, *Respondent*.[1]

CARRIERS—EJECTION OF PASSENGER—STREET CAR NOT RUNNING TO END OF LINE—PAYMENT OF ADDITIONAL FARE—NONSUIT. In an action by a passenger for damages by reason of being ejected from a street car, a nonsuit is properly ordered where it appears that the plaintiff boarded a car that did not run to his destination, paid a five-cent fare, without stating his destination, and, upon reaching the end of the run of that car, was told by the superintendent, who was acting as motorman, to take the next car, and that the conductor thereof would be told to pick him up and carry him to his destination, since the minds of the parties did not meet in a contract to carry him to such point for one fare.

SAME—CONTRACT OF CARRIAGE—TRANSFER CONTRARY TO CUSTOM. The statement of the superintendent that he would tell the conductor of the next car to pick him up and carry him on was not sufficient to create a contract to carry him without the payment of another fare, there being no custom to transfer passengers without an additional fare under such circumstances.

SAME—PROMISE OF EMPLOYE. The fact that the superintendent testifies that he intended to so notify the next conductor, but forgot to do so, does not create any obligation on the part of the company to carry the passenger further without pay.

SAME—EVIDENCE—DISPOSITION OF CONDUCTOR EJECTING PASSENGER. In an action for forcibly ejecting a passenger from a street car, based entirely on the contract of carriage, evidence of the general character and disposition of the conductor who ejected the plaintiff is inadmissible, in the absence of allegations of incompetence.

SAME—EVIDENCE AS TO CAR SCHEDULES. In an action against a street car company for failing to carry a passenger to his destination, where there is no question as to the destination of a certain car boarded by plaintiff, and he made no inquiry as to the same, it is not error to strike out evidence relating to the car schedules of the defendant.

[1]Reported in 77 Pac. 495.

Appeal from a judgment of the superior court for King county, Albertson, J., entered November 9, 1903, upon granting a nonsuit at the close of plaintiff's case, in an action for damages by reason of ejection from a street car for nonpayment of fare.  Affirmed.

*Tucker & Hyland,* for appellant, to the point that the superintendent's promise, under the circumstances, constituted a complete contract of carriage through to Fairview, cited:  *Sloane v. Southern Cal. R. Co.,* 111 Cal. 668, 44 Pac. 320, 32 L. R. A. 193; *O'Rourke v. Citizens' St. R. Co.,* 103 Tenn. 124, 52 S. W. 872, 46 L. R. A. 614, 76 Am. St. 639; *Gulf etc. R. Co. v. Rather,* 3 Tex. Civ. App. 72, 21 S. W. 951; *Gulf etc. R. Co. v. Copeland,* 17 Tex. Civ. App. 55, 42 S. W. 239.

*Peters & Powell,* for respondent.

HADLEY, J.—Appellant sued respondent to recover alleged damages. The complaint avers, that appellant for hire became a passenger upon respondent's road, paid the fare demanded of him, and rode in one of respondent's cars to a point near Brighton Beach, his destination being Fairview, upon said line of road; that at said point near Brighton Beach the respondent, through its officers and agents, with force and without any cause whatsoever, ejected appellant from respondent's car. He avers that he was thereby greatly humiliated, and was damaged in the sum of $2,500, for which amount he demands judgment.  The answer of respondent denies the material allegations of the complaint, and affirmatively alleges, that appellant boarded one of respondent's cars at or near Brighton Beach; that he refused to pay the fare demanded of him by the conductor, as necessary to entitle him to ride as a passenger in said car, and upon such refusal he was, by said conductor, with-

out unnecessary force or violence, ejected from the car. The cause was tried before the court and a jury. At the conclusion of the plaintiff's testimony the defendant moved for a nonsuit, which was granted, judgment was thereupon entered dismissing the action, and the plaintiff has appealed.

The evidence shows that on Sunday, February 1, 1903, appellant boarded one of respondent's cars at the corner of Second avenue south and Washington street, in Seattle. It appears that he desired to go to his home at Fairview, a station on the line of said road outside of the city of Seattle. The conductor demanded his fare, and he paid five cents, the customary amount. He did not inform the conductor that he desired to go to Fairview, and he made no inquiry as to how far that car would go. It also appears by the evidence that the company intended that the car upon which appellant was riding should go no further than Hillman City, which is a station nearer Seattle than Fairview, where appellant desired to go. It appears that appellant did not know that the car would stop at Hillman City, and inasmuch as a car by schedule should have left at 4:30 P. M., bound for a point on the line beyond Fairview, he supposed that this car, which left about that time, would go beyond his station.

Before the car reached Hillman City, a Mr. Brown, the superintendent of respondent company, boarded it and directed the motorman of this car to take another to the barn while he (Brown) acted as motorman of the car which carried appellant until it reached Hillman City. Upon reaching the latter place, Brown concluded that he had time to carry a few passengers as far as Brighton Beach, a station beyond Hillman City, while waiting for the next car to come. He seems to have made this run as a matter of

mere accommodation to certain Brighton Beach passengers, it being no part of the regular run of the car. Appellant remained upon the car until it reached Brighton Beach. At the latter point he was requested by Brown to retire from this car and take the next one coming from the city. Appellant testified as follows:

"I says, 'All right,' and after he got on his car and I got off he says, 'I will tell the conductor on the other car to pick you up and take you on.' I says, 'All right,' and he went back and went into the switch, and just then the other car came along."

After appellant boarded the other car, the conductor demanded fare, which he refused to pay, stating as a reason that he had paid his fare once and was entitled to ride through. He also testified that he attempted to explain, and ask if Brown had not spoken to the conductor, but the latter would hear no explanation, and informed him that he must pay fare or get off. Appellant then said: "'Well,' I says, 'not quite so fast. I have paid my fare once. If you want me off this car, you will have to put me off.'" Thereupon the conductor called the motorman, and, without violence, they removed appellant from the car. No injury was done to his person or clothing.

Appellant's complaint in effect alleges, a contract on the part of respondent to carry him to Fairview station for the price of a fare, which he then paid; that respondent afterwards refused to carry him beyond an intermediate station, demanded further fare from him, and, upon his failure to pay, ejected him. If there was a contract to carry appellant as far as Fairview, then the minds of appellant and respondent's agents must have met upon that subject. Nothing, however, was said to the conductor upon the subject of appellant's destination. The conductor knew that

his car was bound to Hillman City and not beyond. Under such circumstances it was impossible for their minds to have met in an agreement to carry appellant to Fairview for the fare he then paid. The evidence shows that it was a common thing for cars to go no further than Hillman City, and there is no evidence that there was any system of issuing transfer tickets to passengers upon those cars, which were good for passage upon others going beyond there. Even if such system obtained, there is no evidence that appellant asked for such transfer ticket. He contends, however, that if his contract was not, in the first instance, sufficient to carry him beyond Hillman City, it became sufficient when the superintendent said to him: "I will tell the conductor on the other car to pick you up and take you on." It will be observed that Brown did not say that appellant would be carried upon the other car for the fare already paid. Doubtless appellant so inferred, but the language used was not sufficient to make a contract to that effect, at least when unaided by any custom of the company to transfer passengers from one car to another to be carried further without additional fare. We therefore think appellant had no contract except one for carriage as far as the car he first boarded was intended to go, viz., to Hillman City. When he was carried to the latter place, the contract was at an end. His carriage beyond that point, as we have seen, was a mere gratuity, a license to him, revocable at pleasure, until he should pay fare and thus effect a contract for further carriage upon another car.

Appellant sought to show by a witness that Brown, the superintendent, said to him the next day after the incident that it was more his (Brown's) fault than that of the conductor, as he intended to tell the conductor to pick appellant up and take him out, but that he forgot to do so. The

witness did so testify, and it is not clear from the sweeping motion to strike testimony in connection with the motion for nonsuit, whether the court intended to strike this part of the testimony or not. But, for the purposes of this discussion, we shall treat that evidence as before the jury. If one may infer from what Brown said the next day, that he intended to have appellant carried further without additional fare, still it does not appear that such a course of transferring fare-paying passengers was authorized by any custom or regulation of the company. What Brown said to appellant, or what he may have said the next day of his intentions, was no part of the original contract, and amounted to no more than an intention to authorize gratuitous carriage of appellant from Brighton Beach out. Such intention was, however, not carried out, the conductor was not so authorized, appellant presented no evidence of right to free passage, and, in any event, such passage would have been without consideration from appellant to support a contract, and, in the absence of injury from excessive force used to expel him from the car, or from other inexcusable negligence, would furnish no ground for recovery.

We regard this case as wholly unlike that of *Lawshe v. Tacoma Railway & Power Co.*, 29 Wash. 681, 70 Pac. 118, 59 L. R. A. 350, cited by appellant. In that case the system of transferring from one car to another, under payment of a single fare, prevailed, and an actual contract for such a transfer and passage was made; but the conductor of the first car, having made the transfer check read over the wrong line, the second conductor ejected the passenger. It was held that the passenger had, in consideration of the fare paid, and of his application for a proper transfer check, an actual contract for continuous passage, and was therefore wrongfully ejected. We have seen, however, that

in the case at bar there was no contract for continuous passage, and it was therefore limited to the extent of the run of the car upon which the fare was paid. We believe the court did not err in granting the nonsuit.

Error is assigned upon the court's refusal to admit evidence touching the general character and disposition of the conductor who ejected appellant. We think this was properly rejected, since his conduct and disposition, as manifested upon the particular occasion, were the only proper subjects for inquiry. Moreover, appellant's complaint does not allege, as a ground of recovery, the employment of an incompetent conductor, but it is based merely upon an alleged breach of contract for carriage.

It is assigned that the court erred in striking certain evidence relating to car schedules. Even if we consider all of that evidence, we are unable to see that it affects the actual contract hereinbefore discussed, and which the court must have considered in granting the nonsuit. While it may be true that the car appellant boarded left Seattle about the time a car ordinarily left for points beyond Hillman City, still there is, we think, no room for argument under the evidence that this particular car was started for points beyond Hillman City, and appellant made no inquiry as to the destination of the car.

The judgment is affirmed.

FULLERTON, C. J., and ANDERS, MOUNT, and DUNBAR, JJ., concur.